## Chemical National Bank of New York, Plff. in Err., v. J. T. Tuttle et al.

The evidence adduced to show that an attaching creditor had actual notice, before issuing his attachment, that the property had been assigned, reviewed, and *held* wholly insufficient.

(Decided April 26, 1886.)

Error to the Common Pleas, No. 3, of Philadelphia County to review a judgment for defendant in foreign attachment proceedings. Reversed.

On September 26, 1882, John S. Tuttle made an assignment

in New York city for the benefit of his creditors. This assignment was not recorded in Pennsylvania until December 19, 1883.

On November 7, 1882, a writ of foreign attachment, at the instance of the Chemical National Bank of New York, issued out of the court of common pleas, No. 3, of Philadelphia, which was duly served on the Southwark National Bank as garnishee. Judgment was entered against the said Tuttle on September 8, 1883. On September 21, 1883, damages were assessed in the sum of $13,193.74; and on the same day a writ of scire facias issued against the said garnishee, who admitted that the amount in its hands was $2,654.82.

The act of May 3, 1855 (P. L. 415), reads as follows: "Whenever any person making an assignment of his or her estate situate within this commonwealth, for the benefit of creditors, shall be resident out of this state, such assignment may be recorded within any county where such estate, real or personal, may be, and take effect from its date: *Provided,* That no bona fide purchaser, mortgagee, or creditor having a lien thereon before the recording in the same county, and not having had previous actual notice thereof, shall be affected or prejudiced."

Under the provisions of this act, the assignment of Tuttle, when recorded, took effect from its date, and defeated the attachment of the Chemical bank, if it had actual notice of the assignment prior to the institution of its action.

The evidence therefore was directed to show that the bank had such notice. The judge in his charge reviewed the evidence, and left it to the jury to say whether the bank had notice. The jury found for defendants, and the plaintiff brought error.

*John G. Johnson,* for plaintiff in error.—Upon the question of the manner of giving notice to a corporation, and what notice will suffice, cited: 6 Southern Law Review, N. S. 796; Edwards v. Martin, L. R. 1 Eq. 121; *Ex parte* Agra Bank, L. R. 3 Ch. 560; North British Ins. Co. v. Hallett, 7 Jur. N. S. 1263; *Ex parte* Boulton, 1 De G. & J. 163; Morse, Banks & Banking, 2d ed. 131; Sykes v. Perry County Mut. F. Ins. Co. 34 Pa. 83; Wilson v. McCullough, 23 Pa. 445, 62 Am. Dec. 347; Custer v. Tompkins County Bank, 9 Pa. 27; Bank of Pittsburgh v. Whitehead, 10 Watts, 402, 36 Am. Dec. 186; Miller v. Illinois

C. R. Co. 24 Barb. 331; Fulton Bank v. New York & S. Canal Co. 4 Paige, 137.

*Samuel B. Huey,* for defendants in error.—It is stripping the office of president of one of its necessary incidents to say that, while having power to bind corporations and to act for them in the wider field through which his powers confessedly range, he cannot affect them by the receipt of notices of facts that his wide powers make it incumbent on him to remember and to observe in the interests of his company.

The law is not so. Porter v. Bank of Rutland, 19 Vt. 410; Fulton Bank v. New York & S. Canal Co. 4 Paige, 136.

Notice to an agent of a party, whose duty it is, as such agent, to act upon this notice or to communicate the information to his principal in the proper discharge of his trust as such agent, is legal notice to the principal, and this rule applies to corporations as well as others. Port Jervis v. First Nat. Bank, 96 N. Y. 550.

Whenever the law requires notice to be given to a moneyed corporation, it is well served by being communicated to its chief financial officer. New Hope & D. Bridge Co. v. Phenix Bank, 3 N. Y. 166.

When his agency is of a continuous character, and the duty rests upon him to communicate information, acquired by him, to his principal, his knowledge, however and wherever acquired, becomes the knowledge of his principal, and he is bound thereby. Holden v. New York & E. Bank, 72 N. Y. 286; Fulton Bank v. New York & S. Canal Co. 4 Paige, 136. See First Nat. Bank v. Peisert, 2 Pennyp. 288; Harrisburg Bank v. Tyler, 3 Watts & S. 373.

OPINION BY MR. JUSTICE GREEN:

It is very clear to us that the learned court below misinterpreted the testimony of the witness Tuttle on the subject of notice, in the charge to the jury. The witness said:

"In the latter part of October following the September when I made my assignment, I called on Mr. Williams, president of the Chemical bank, with my counsel, Mr. Chittenden, for the purpose of getting him to sign a release to me, which he at the time declined on account of the attachment taken out on these

bonds, and conversed with Mr. Williams in reference to the assignment."

This is absolutely the whole of the information which the witness says he communicated to the plaintiff in regard to the assignment before the attachment was issued. He "conversed with Mr. Williams in reference to the assignment," but what the conversation was, what facts he stated, what information he gave, we cannot tell; the witness does not say. This extremely vague, meager, and uncertain testimony was allowed to go to the jury as proof of actual notice to the plaintiff, prior to the issuing of the plaintiff's attachment; and the whole fate of the case depended, under the charge, upon whether this conversation occurred before the attachment was issued. Now the attachment was not issued until November 7, and the witness says that Mr. Williams declined to sign the release "on account of the attachment taken out on the bonds."

It is too plain for argument that the conversation could not have taken place until after the attachment was issued, for the fact of the attachment was the reason given for declining the request of the witness. Subsequently the witness corrected his testimony by saying that he remembered distinctly having gone to call on Mr. Williams with his assignee, Samuel W. Jackson, two or three days before October 21, to make inquiry about the amount which Mr. Follett had borrowed on $25,000, Delaware & Hudson Canal bonds, which the witness had pledged to Follett. But he does not say that in that conversation anything whatever was said about the assignment. He adds that he subsequently called on Mr. Williams with Mr. Chittenden in the latter part of November.

Mr. Chittenden, being examined, says that he had two interviews only with Mr. Williams, the first of which occurred about the 22d of November, and the second several months later. Both interviews related to the same subject, and in both Mr. Williams said the bank would unite in the discharge if it could do so without affecting the attachment in Philadelphia. He adds that "some information concerning this attachment led me to go with Mr. Tuttle to see Mr. Williams; and I had no interview with him, either alone or in Mr. Tuttle's presence, until after I heard of the commencement of proceedings in Philadelphia. In all his conversations with me Mr. Williams said he would do noth-

ing to affect the suit in Philadelphia, but would join in the discharge if he could do so without affecting that litigation."

This being the state of the testimony, and there being no other evidence whatever of notice of the assignment to the plaintiff before the issuing of the attachment, the court said in the charge: "Tuttle swears that before the 7th of November, 1882, he went to the bank and conversed there with the president, whom he saw, on the subject of the assignment. He made a mistake as to the date. This he subsequently corrected, and he told why he corrected it. In both instances he fixes the date before the service of the attachment." In our view of the testimony this is quite erroneous.

While it is true that Tuttle did say at first that he conversed with Williams about the assignment before November 7, he stated also two facts which are utterly inconsistent with the possibility of that conversation having occurred before that date. One was that Mr. Williams declined his request for a discharge, on account of the attachment; and the other that Mr. Chittenden was with him, and Mr. Chittenden swears that he was there with him and upon the same business, but it was not until the latter part of November, and the attachment had already been issued. It is true, as the learned judge says, that Tuttle made a mistake as to the date and subsequently corrected it; but it is quite contrary to his testimony, as we view it, to say that in both instances he fixed the date before the service of the attachment.

The change that he made in his testimony was in saying that the occasion upon which he was with Mr. Williams, in October, was a visit which he made with his assignee, Mr. Jackson, to inquire about the Delaware & Hudson Canal bonds. He does not say or intimate that upon that occasion anything was said about the assignment. He immediately follows his explanation by repeating that the time when he called with Mr. Chittenden was in the latter part of November, and he does not say or intimate that the conversation which then occurred was in any respect different from that which he previously testified had occurred in the presence of Mr. Chittenden. In other words, he leaves his testimony as to what occurred when Mr. Chittenden was with him entirely unchanged, and he states a different conversation as having occurred when Mr. Jackson was with him.

It is needless to add that Mr. Chittenden entirely corroborates this view of the case, and hence it is that the corroborating tes-

timony, instead of supporting the theory that the conversation about the assignment took place before the assignment, entirely destroys it. It is useless to discuss the possibilities or the probabilities that the plaintiff had notice or knowledge of the assignment in other ways, such as by publications in the newspapers or by inferences as to what must have been the nature of the conversation between the parties at the interviews spoken of. The question we are dealing with is a question of actual notice essential to deprive a party of a legal right. Whilst there is a wide field of discussion as to what constitutes actual notice in such a case, and of such a matter as this, its widest limits will not include the news of the day appearing in newspapers, nor inferences, however natural, as to what might or ought to have been said in conversations not described.

All the assignments of error are sustained.

Judgment reversed, and new *venire* awarded.